UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOONBUG ENTERTAINMENT LIMITED,<br><br>　　　　　　　　Plaintiff,<br><br>　-v-<br><br><br>ANYANG FEEKER TRADING CO., LTD., <u>et</u> <u>al.</u>,<br><br>　　　　　　　　Defendants. | CIVIL ACTION NO. 22 Civ. 2386 (RA) (SLC)<br><br>**REPORT AND RECOMMENDATION** |

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE RONNIE ABRAMS**, United States District Judge:

**GLOSSARY**

| Term | Definition | Docket Entry Number |
|---|---|---|
| **Plaintiff** | Moonbug Entertainment Limited | N/A |
| **Defendants** | ABDG Store, Anime-House Store, Anyang Feeker Trading Co., Ltd., Baby board game(drop shipping) Store Store, BAOKANWEIYI Store, Black Man K Store, Changsha Wodemore Technology Co., Ltd., CLHW Grocery Store, Cute Small Mouse Toy Store, Cute Sticker House Store, CXLIDY PARTY Store, Daily boutique department Store, Dongguan Nuosheng Electronic Technology Co., Ltd., Dongguan Tongjia Toys Co., Ltd., Dongyang Yadi Pet Product Co., Ltd., Ee Party Store, Eweiser Electronic Technology (shenzhen) Co., Ltd., FACAIParty Store, Farshunin Store, Fook Fong Toy Store, Fujian Province Jianou City Ruiyi Crafts Co., Ltd., Fun Le Toy City Store, Fun-party Store, GongTen Store, Guangzhou Happy Island Toys Co., Ltd., Guangzhou Yimai Trading Co., Ltd., Hangzhou Xingge Gift Co., Ltd., Hangzhou Xingge Gifts Co., Ltd., Hebei Shuohui Paper Products Co., Ltd., Henan Feeker Import And Export Co., Ltd., Henan Senfa Trading Co., Ltd., Indecor Store, Jinhua Zhibo Garment Co., Ltd., Jinjiang Chengle Shoes And Garment Co., Ltd., JJ Party Store, Kids-toy Store, Let's party together Store, Life & art Store, Little Monkey Toy Store, LU Wood Store, Mother and baby toy | N/A |

|  | store Store, PESENAR Store, pesenar1314 Store, PHOTURT Backdrops Store, piaoliang baby Store, PP Baby Store, Purple Game Store, Qingdao Bazhizhi Culture Co., Ltd., Quanzhou Happy Brothers Trading Co., Ltd., Quanzhou Jinhetuo Packaging Supplies Co., Ltd., Quanzhou Longkun Arts And Crafts Co., Ltd., Shanghai Xinyan Industrial Co., Ltd., Shaoxing Hualai Emb. & Home Textile Co., Ltd., Shop1970547 Store, Shop5702013 Store, Shop911116284 Store, Sky Home Co.,Ltd, Sticker world Store, Temila plush toy Store, Togetit Store, VL Store, Wanmei baby Store, Xiamen Palmy Import & Export Co., Ltd., Yangzhou Caisheng Handicraft Product Co., Ltd., Yangzhou Meixuan Toys And Gifts Co., Ltd., Yiwu Bobo Crafts Co., Ltd., Yiwu Changyuan E-Commerce Firm, Yiwu City Carnival Costume Factory, Yiwu Dingyi E-Commerce Co., Ltd., Yiwu Fuxin Trade Co.,  Ltd., Yiwu Hualei E-Commerce Co., Ltd., Yiwu Kairan Trading Co., Ltd., Yiwu Longfei Garment Co., Ltd., Yiwu Miaojia Technology Co., Ltd., Yiwu Minzhi Clothing Firm, Yiwu Queyi Clothing Co., Ltd., Yiwu Tangao E-Commerce Firm, Yiwu Toystocker Toys Co., Ltd., Yiwu Yuyun Trading Co., Ltd., Yiwu Zihan Import And Export Co., Ltd. and Yuduobao Toy Store |  |
|---|---|---|
| **Defaulting Defendants** | Anyang Feeker Trading Co., Ltd., Changsha Wodemore Technology Co., Ltd., CLHW Grocery Store, Dongguan Nuosheng Electronic Technology Co., Ltd., Dongguan Tongjia Toys Co., Ltd., Dongyang Yadi Pet Product Co., Ltd., Ee Party Store, Eweiser Electronic Technology (shenzhen) Co., Ltd., Farshunin Store, Fujian Province Jianou City Ruiyi Crafts Co., Ltd., Fun Le Toy City Store, Fun-party Store, Guangzhou Happy Island Toys Co., Ltd., Guangzhou Yimai Trading Co., Ltd., Hebei Shuohui Paper Products Co., Ltd., Henan Feeker Import And Export Co., Ltd., Henan Senfa Trading Co., Ltd., Indecor Store, Jinhua Zhibo Garment Co., Ltd., Jinjiang Chengle Shoes And Garment Co., Ltd., JJ Party Store, Let's party together Store, LU Wood Store, Mother and baby toy store Store, PESENAR Store, pesenar1314 Store, piaoliang baby Store, Qingdao Bazhizhi Culture Co., Ltd., Quanzhou Happy Brothers Trading Co., Ltd., Quanzhou Jinhetuo Packaging Supplies Co., Ltd., Quanzhou Longkun Arts And Crafts Co., Ltd., Shanghai Xinyan Industrial Co., Ltd., Shaoxing Hualai Emb. & Home Textile Co., Ltd., Shop1970547 Store, Shop5702013 Store, Wanmei baby Store, Xiamen Palmy Import & Export Co., Ltd., Yangzhou Caisheng Handicraft Product Co., Ltd., Yangzhou Meixuan |  |

2

| | | |
|---|---|---|
| | Toys And Gifts Co., Ltd., Yiwu Changyuan E-Commerce Firm, Yiwu City Carnival Costume Factory, Yiwu Dingyi E-Commerce Co., Ltd., Yiwu Fuxin Trade Co., Ltd., Yiwu Hualei E-Commerce Co., Ltd., Yiwu Kairan Trading Co., Ltd., Yiwu Longfei Garment Co., Ltd., Yiwu Miaojia Technology Co., Ltd., Yiwu Minzhi Clothing Firm, Yiwu Queyi Clothing Co., Ltd., Yiwu Tangao E-Commerce Firm, Yiwu Toystocker Toys Co., Ltd., Yiwu Yuyun Trading Co., Ltd. and Yiwu Zihan Import And Export Co., Ltd. | |
| **Alibaba** | Alibaba.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York | N/A |
| **AliExpress** | Aliexpress.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York | N/A |
| **Complaint** | Plaintiff's Complaint filed on March 24, 2022 | 9 |
| **Application** | Plaintiff's Ex Parte Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined infra) and Defendants' Assets (as defined infra) with the Financial Institutions (as defined infra); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery filed on March 24, 2022 | 12–15 |
| **TRO** | 1) Temporary Restraining Order; 2) Order Restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions; 3) Order to Show Cause Why a Preliminary Injunction Should Not Issue; 4) Order Authorizing Bifurcated and Alternative Service; and 5) Order Authorizing Expedited Discovery entered on April 13, 2022 | 16 |
| **PI Order** | May 17, 2022 Preliminary Injunction Order | 20 |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, | N/A |

3

| | advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them | |
|---|---|---|
| Blippi | A fun, energetic entertainer known for his goofy mannerisms, signature blue and orange outfit and educational videos | N/A |
| Blippi Content | Interactive videos exploring the world through the eyes of a child while teaching them valuable skills such as counting, learning colors and much more | N/A |
| Blippi Registrations | U.S. Trademark Registration Nos.: 5,333,930 for "BLIPPI" for a variety of goods in Class 28; 5,335,209 for "BLIPPI" for a variety of goods in Class 25 and 6,495,654 for " " for goods in Classes 9, 16, 25, 28 and 41 | N/A |
| Blippi Application | U.S. Trademark Serial Application No. 88/553,924 for "BLIPPI", for goods in Classes 18, 20, 21, 24 and 27 | N/A |
| Blippi Marks | The marks covered by the Blippi Registrations and the Blippi Application | N/A |
| Blippi Products | A variety of consumer products, such as t-shirts, backpacks and other gear | N/A |
| Counterfeit Products | Products bearing or used in connection with the Blippi Marks, and/or products in packaging and/or containing labels bearing the Blippi Marks, and/or bearing or used in connection with marks that are confusingly similar to the Blippi Marks and/or products that are identical or confusingly similar to the Blippi Marks | N/A |

## I. INTRODUCTION

Plaintiff Moonbug Entertainment Limited asserts trademark infringement and counterfeiting claims against Defaulting Defendants arising out of Defaulting Defendants' unauthorized use of Plaintiff's Blippi Marks including, without limitation, in their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying or offering for

sale and/or selling and/or sale of the Counterfeit Products.  (See Dkt. No. 9).[1]  After Defaulting Defendants failed to answer and defend in this action, the Clerk of Court entered a Certificate of Default against each of them.  (Dkt. No. 31 (the "CoD")).[2]  On August 21, 2025, the Honorable Ronnie Abrams granted Plaintiff's motion for a default judgment and a permanent injunction as to the Defaulting Defendants, (Dkt. Nos. 32–35; 47 (the "Motion")), and referred this matter to the undersigned to conduct an inquest on damages.  (Dkt. No. 48; 49 (the "Default Order")).

For the reasons set forth below, we respectfully recommend that Plaintiff be awarded (1) statutory damages in the amount of $50,000.00 for each of the 53 Defaulting Defendants, for a total of $2,650,000.00, and (2) post-judgment interest.  See 28 U.S.C. § 1961.

## II.BACKGROUND

Given Defaulting Defendants' default, we accept as true all well-pleaded factual allegations in the Complaint, except as to damages.  See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("it is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (quoting Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004));

---

[1] Defined terms are set forth in the Glossary or otherwise defined in this Report and Recommendation.

[2] As explained below, (see § II.B, infra), the Clerk of Court entered default against 78 Defendants. (Dkt. No. 31).  After the CoD was entered, however, Plaintiff voluntarily dismissed 25 Defendants, leaving the 53 Defaulting Defendants.  (Dkt. No. 40).

Whitehead v. Mix Unit, LLC, No. 17 Civ. 9476 (VSB) (JLC), 2019 WL 384446, at *1 (S.D.N.Y. Jan. 31, 2019).[3]

### A. Factual Background[4]

Plaintiff is a global entertainment company that creates and distributes children's stories, including Cocomelon, Little Baby Bum, Arpo, the Sharksons, and Blippi. (Dkt. Nos. 9 ¶ 7; 14 ¶ 3; 34 at 14). Plaintiff owns the intellectual property assets for the Blippi children's program featuring the main character, Blippi. (Dkt. Nos. 9 ¶ 8; 14 ¶ 4; 34 at 14). Blippi Content consists of streaming videos on platforms such as YouTube, Hulu, Roku, and Amazon Prime video, along with Blippi Products such as dolls, t-shirts, and backpacks. (Dkt. Nos. 9 ¶¶ 9–10; 14 ¶¶ 5–6; 34 at 14). Plaintiff owns the Blippi Registrations and has gained common law trademark and other rights in its Blippi Marks through its predecessors' use, advertising, and promotion. (Dkt. Nos. 9 ¶¶ 12–13; 14 ¶ 8; 34 at 14).

Defaulting Defendants are in China but conduct business in the United States via the e-commerce platforms Alibaba and AliExpress. (Dkt. Nos. 9 ¶ 21–22, 24; 34 at 15). Through their Merchant Storefronts, Defaulting Defendants offer for sale and/or sell the Counterfeit Products,

---

[3] Internal citations and quotations are omitted from case citations unless otherwise indicated.

[4] We incorporate by reference the factual background set forth in Judge Abrams' Opinion and Order dated June 30, 2025, which authorized alternative service by email against the Defaulting Defendants. (Dkt. No. 42 (the "Alternative Service O&O")).

and target and ship the Counterfeit Products to customers located in the U.S., including New York, and throughout the world.  (Dkt. Nos. 9 ¶ 25; 34 at 15).

### B. Procedural Background

On March 24, 2022, Plaintiff filed the Complaint and the Application.  (Dkt. Nos. 9; 12–15).[5]  On April 13, 2022, Judge Abrams entered the TRO granting the Application and authorizing alternative service of process by email pursuant to Federal Rule of Civil Procedure 4(f)(3).  (Dkt. No. 16).  Plaintiff then served Defendants with the summons, Complaint, Application, and TRO via email, pursuant to the TRO.  (Dkt. No. 19 at 4–7).  On May 17, 2022, Judge Abrams issued the PI Order.  (Dkt. No. 20).

In September 2022, Plaintiffs voluntarily dismissed its claims with prejudice against three Defendants.  (Dkt. No. 23; 25).[6]  On December 7, 2022, Plaintiff obtained the CoD against the remaining 78 Defendants.   (Dkt No. 31).   On December 9, 2022, Plaintiff filed the Motion supported by an affidavit of Danielle S. Futterman, (Dkt. No. 33 (the "Futterman Aff.")), and a memorandum of law.  (Dkt. No. 34 (the "MoL"), together with the Futterman Aff., the "Damages Submission").   On January 31, 2025, Judge Abrams ordered Plaintiff to submit supplemental briefing addressing whether the previously authorized alternative service of process by email on Defendants was proper.  (Dkt. No. 36).  Following Plaintiff's supplemental briefing, (Dkt. No. 38–

---

[5] Plaintiff originally filed this action under seal.  (See Dkt. Nos. 1–2).  Then, on May 12, 2022, Judge Abrams unsealed the action, at which point the Records Management uploaded all documents to the Electronic Case Filing System.  (Dkt. No. 5).

[6] On September 9, 2022, Plaintiff voluntarily dismissed, with prejudice, Defendants Hangzhou Xingge Gift Co., Ltd. and Hangzhou Xingge Gifts Co., Ltd.  (Dkt. No. 23).  On September 14, 2022, Plaintiff voluntarily dismissed, with prejudice, Defendant Yiwu Bobo Crafts Co., Ltd.  (Dkt. No. 25).

39), and its voluntarily dismissal of an additional 25 Defendants, (Dkt. No. 40),[7] on June 30, 2025, Judge Abrams issued the Alternative Service Order finding that Plaintiff's prior alternative service of process via email was proper and further authorizing alternative service of the Motion and CoD via email on Defaulting Defendants.  (Dkt. No. 42).  On August 1, 2025, Plaintiff served Defaulting Defendants via email with, inter alia, the Motion and CoD.  (Dkt. No. 45).[8]  On August 21, 2025, Judge Abrams entered the Default Order granting the Motion and referred the matter to the undersigned to conduct an inquest on damages.  (Dkt. No. 48–49).

On August 22, 2025, we ordered Defaulting Defendants to respond to the Damages Submission by September 5, 2025 and warned Defaulting Defendants that failure to timely respond to the Damages Submission or request a hearing would result in the undersigned "issu[ing] a report and recommendation concerning damages based on Plaintiff's [Damages Submission] alone without an in-Court hearing."  (Dkt. No. 50 (the "Inquest Order")).  We further ordered Plaintiff to serve the Inquest Order on Defaulting Defendants.  (Id.) On August 25, 2025,

---

[7] On February 14, 2025, Plaintiff voluntarily dismissed, with prejudice, Defendants ABDG Store, Anime-House Store, Baby board game(drop shipping) Store Store, BAOKANWEIYI Store, Black Man K Store, Cute Small Mouse Toy Store, Cute Sticker House Store, CXLIDY PARTY Store, Daily boutique department Store, FACAIParty Store, Fook Fong Toy Store, GongTen Store, Kids-toy Store, Life & art Store, Little Monkey Toy Store, PHOTURT Backdrops Store, PP Baby Store, Purple Game Store, Shop911116284 Store, Sky Home Co.,Ltd, Sticker world Store, Temila plush toy Store, Togetit Store, VL Store and Yuduobao Toy Store. (Dkt. No. 40).

[8] Although Plaintiff did not serve 6 of the 53 Defaulting Defendants with the Motion and CoD, Plaintiff successfully served the 6 Defaulting Defendants with the summons, Complaint, TRO, and Application. (Dkt. No. 46).  Accordingly, Judge Abrams granted the Motion with respect to all 53 Defaulting Defendants.  (Dkt. No. 49).  See Moskovitz v. La Suisse, No. 06 Civ. 4404 (CM), 2013 WL 6197163, at *8 (S.D.N.Y. Nov. 25, 2013) (finding that a defaulted party need not "actually receive the papers in support of the motion for a default judgment," and that where the defaulted party was served with process but never appeared, "the Federal Rules don't require that a default judgment [motion] be served on him at all.").

Plaintiff served the Inquest Order Defaulting Defendants.  (Dkt. No. 51 ¶ 6).[9]  To date, Defaulting

Defendants have not responded to the Damages Submission.

### III. DISCUSSION

#### A. Jurisdiction

As a threshold matter, the Court has federal subject matter jurisdiction over Plaintiff's

claims pursuant to 28 U.S.C § 1331 because Plaintiff sued under a federal statute, the Lanham

Act, 15 U.S.C. §§ 1051 et seq.  See 28 U.S.C § 1331.

Plaintiff alleges that the Court has personal jurisdiction over Defaulting Defendants

because, on information and belief, Defaulting Defendants "systematically direct[ed] and/or

target[ed] their business activities at consumers in the U.S., including New York, through

accounts with online marketplace platforms such as Alibaba and/or AliExpress" and Defaulting

Defendants transacted business with U.S. consumers, including in New York, for the sale and

shipment of the Counterfeit Products.  (Dkt. No. 9 ¶ 3(a)–(e)).  Courts in this District have

previously found that AliBaba and AliExpress "allow manufacturers and other third-party

merchants . . . to advertise, distribute, offer for sale, sell and ship their retail products . . .

directly to consumers worldwide and specifically to consumers residing in the U.S., including

New York."  Mattel, Inc. v. Agogo Store, No. 21 Civ. 1507 (AJN), 2021 WL 1159906, at *2

(S.D.N.Y. Mar. 18, 2021).  As stated above, (see § II, supra), given that we accept as true all well-

pleaded factual allegations in the Complaint, except as to damages, we accept as true that

---

[9] For the same reasons stated above, (see n.5, supra), although Plaintiff did not serve 6 of the 53 Defaulting Defendants with the Inquest Order, given that Plaintiff successfully served the 6 Defaulting Defendants with the summons, Complaint, TRO, and Application, we conclude that all Defaulting Defendants had notice of the potential for a default judgment.  (See Dkt. No. 51 ¶ 6).

Defaulting Defendants transacted business with U.S. consumers, including in New York, for the sale and shipment of the Counterfeit Products through accounts with online marketplace platforms such as Alibaba and AliExpress.  (Dkt. No. 9 ¶ 3(a)–(e)).  Accordingly, this Court has personal jurisdiction over Defendants under N.Y. C.P.L.R. § 302(a)(1) ("§ 302"), the "jurisdictional net" of which "reaches those defendants who, under the totality of circumstances, 'purposefully avail themselves of the privilege of conducting activities within New York, thus invoking the benefits and protections of its law.'"  WowWee Grp. Ltd. v. Meirly, No. 18 Civ. 706 (AJN), 2019 WL 1375470, at *3–5 (S.D.N.Y. Mar. 27, 2019) (finding personal jurisdiction existed under § 302(a)(1) for defaulting defendants who maintained an interactive website, some of whom completed sales to New York customers) (quoting Mattel, Inc. v. Adventure Apparel, No. 00 Civ. 4085 (RWS), 2001 WL 286728, at *2 (S.D.N.Y. Mar. 22, 2001)) (citation modified)).[10]

The exercise of personal jurisdiction over Defendants under a state long-arm statute like § 302, which provides for narrower jurisdiction than the Due Process Clause, thus comports with due process.  See Energy Brands, 571 F. Supp. 2d at 468–69 (citing United States v. Montreal Trust Co., 358 F.2d 239, 242 (2d Cir. 1966)).  In addition, in the Alternative Service Order, Judge Abrams found that Plaintiff's alternative service of process via email to the Defaulting Defendants was proper and "comport[ed] with constitutional notions of due process[.]"  (Dkt. No. 42 at 8–9).

---

[10] A second, independent basis for personal jurisdiction over Defaulting Defendants may also lie under N.Y. C.P.L.R. § 302(a)(3)(ii), which permits long-arm jurisdiction over defendants who (1) committed a tortious act outside of New York; (2) causing injury within New York state; (3) that defendants knew or should reasonably have known would have consequences in New York; and (4) derive substantial revenue from interstate or international commerce.  Energy Brands Inc. v. Spiritual Brands, Inc., 571 F. Supp. 2d 458, 470 (S.D.N.Y. 2008).

B. **Legal Standards**

1. **Default Judgment**

A party seeking a default judgment must follow the two-step procedure set forth in Federal Rule of Civil Procedure 55. See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186–87 (2d Cir. 2015) (per curiam). First, under Rule 55(a), where a party has failed to plead or otherwise defend in an action, the Clerk of the Court must enter a certificate of default. See Fed. R. Civ. P. 55(a). Second, after entry of the default, if the party still fails to appear or move to set aside the default, the Court may enter a default judgment. See Fed. R. Civ. P. 55(b).

2. **Liability**

A defendant's default is deemed "a concession of all well-pleaded allegations of liability," Rovio Ent., Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015), but a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants." Gesualdi v. Quadrozzi Equip. Leasing Corp., 629 F. App'x 111, 113 (2d Cir. 2015) (summary order). The Court must determine "whether the allegations in [the] complaint establish the defendants' liability as a matter of law." Id. If the Court finds the well-pleaded allegations establish liability, the Court analyzes "whether [the] [p]laintiff has provided adequate support for the relief it seeks." Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008). "If, however, the Court finds that the complaint fails to state a claim on which relief may be granted, the Court may not award damages, even if the post-default inquest submissions supply the missing information." Lopez v. Emerald Staffing, Inc., No. 18 Civ. 2788 (SLC), 2020 WL 915821, at *4 (S.D.N.Y. Feb. 26, 2020).

11

### 3. **Damages**

Once liability has been established, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Getty Images (US) Inc. v. Advernet, Inc., 797 F. Supp. 2d 399, 411 (S.D.N.Y. 2011) (citing Credit Lyonnais Sec. (USA) v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). A plaintiff "bears the burden of establishing [its] entitlement to recovery and thus must substantiate [its] claim with evidence to prove the extent of damages." Lopez, 2020 WL 915821, at *5. The evidence the plaintiff submits must be admissible. See Poulos v. City of New York, No. 14 Civ. 3023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July 13, 2018), adopted by, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("damages must be based on admissible evidence"). If the documents the plaintiff has submitted provide a "sufficient basis from which to evaluate the fairness of" the requested damages, the Court need not conduct an evidentiary hearing. Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989); see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (noting that a court may determine appropriate damages based on affidavits and documentary evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment.").

### C. **Application**

#### 1. **Default Judgment**

In accordance with the two-step process in Rule 55, the Clerk of the Court entered the CoD against the Defaulting Defendants, (Dkt. No. 31), and they have failed to appear, defend against Plaintiff's claims, respond to the Inquest Order, or otherwise challenge the default. (See

Dkt. No. 50).  Further, pursuant to the Default Order, Judge Abrams granted Plaintiff's motion for

a default judgment and permanent injunction against Defaulting Defendants.  (Dkt. No. 49).

Accordingly, entry of default judgment is warranted.

### 2.  Liability

As noted above, (see § III.B.2, supra), before entering a default judgment, the Court must

"determine whether the plaintiff's allegations establish the defendant's liability as a matter of

law."  Moore v. Booth, 122 F.4th 61, 69 (2d Cir. 2024).

Here, in the Default Order, Judge Abrams has already determined that Defaulting

Defendants are liable "as to the first and second causes of action pleaded in the Complaint

(trademark counterfeiting and trademark infringement)."  (Dkt. No. 49 at 9).  In an abundance of

caution, however, we analyze Defaulting Defendants liability below.

In the Complaint, Plaintiff alleges five causes of action arising out of Defaulting

Defendants' alleged marketing and sale of the Counterfeit Products.  (See Dkt. No. 9).  In the

Motion, however, Plaintiff "only seeks damages for its First and Second Causes of Action," and

"does not seek monetary relief in connection with the remaining causes of action [pled] in the

Complaint or attorneys' fees."  (Dkt. No. 34 at 13 n.2).  Accordingly, we limit our assessment and

recommended damages to Plaintiff's first and second causes of action.

The two claims for which Plaintiff seeks damages allege trademark counterfeiting and

infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1116(d), and 1117(b)–(c).

(Dkt. No. 9 at 20–24).  The Lanham Act imposes civil liability on any person who "reproduce[s],

counterfeit[s], cop[ies], or colorably imitate[s] a registered mark" without the consent of the

13

registrant and applies the reproduced or counterfeited mark to goods offered for sale in a way that is "likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(1).

In evaluating whether a plaintiff has established these claims for purposes of a default judgment, the court must "ask whether the allegedly infringed mark 'is entitled to protection' and, if so, 'whether use of the allegedly infringing mark is likely to cause consumer confusion as to the origin or sponsorship of the products to which it is attached.'"  Mattel, Inc. v. 1622758984, No. 18 Civ. 8821 (AJN), 2020 WL 2832812, at *3 (S.D.N.Y. May 31, 2020) (quoting Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 168 (2d Cir. 2016)).  With respect to the first element, "[a] certificate of registration with the [Patent and Trademark Office] is [prima facie] evidence that the mark is registered and valid . . ., that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce."  Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999) (citing 15 U.S.C. § 1115(a)).  For the second element, consumer confusion, courts in this Circuit recognize that "counterfeits, by their very nature, cause confusion."  Coach, Inc. v. Horizon Trading USA Inc., 908 F. Supp. 2d 426, 433 (S.D.N.Y. 2012) (quoting Gucci Am., Inc. v. Duty Free Apparel, Ltd., 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003)).

We find that both elements are met here.  Plaintiff alleges that it owns and possesses certificates of trademark registration for the Blippi Registrations, images of which it attached as Exhibit B to the Complaint.  (Dkt. Nos. 9 ¶¶ 12–14; 9-2).  Plaintiff's allegation that the Counterfeit Products are "nearly indistinguishable" from Plaintiff's Blippi Products, with only "minor variations that no ordinary consumer would recognize[,]" (Dkt. No. 9 ¶ 31), is "sufficient to support the conclusion that the marks deployed by [D]efaulting Defendants are counterfeits,"

14

and therefore both elements are met.  Mattel, Inc. v. 1622758984, 2020 WL 2832812, at *3

(granting default judgment on, among other claims, trademark counterfeiting and infringement

claims under the Lanham Act) (citing Montres Rolex, S.A. v. Snyder, 718 F.2d 524, 531–32 (2d Cir.

1983)).

### 3.  Damages

#### a.  Statutory Damages

As noted above, (see § II, supra), a defendant's default is deemed "a concession of all

well-pleaded allegations of liability," but it is not deemed an admission of damages.  Rovio, 97 F.

Supp. 3d at 545.  "The district court must instead conduct an inquiry in order to ascertain the

amount of damages with reasonable certainty."  Am. Jewish Comm. v. Berman, No. 15 Civ. 5983

(LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15, 2016), adopted by, 2016 WL 4532201

(S.D.N.Y. Aug. 29, 2016) (quoting Credit Lyonnais, 183 F.3d at 155).

In the Motion, Plaintiff seeks statutory damages of $50,000 against each Defaulting

Defendant (the "Requested Damages") plus statutory post-judgment interest.  (Dkt. No. 34 at

28).  Section 1117(c) of the Lanham Act provides that a prevailing plaintiff may recover statutory

damages in the amount of "not less than $1,000 or more than $200,000 per counterfeit mark per

type of goods or services sold, offered for sale, or distributed, as the court considers just[.]"  Otter

Prods., LLC v. 4PX Express USA Inc., No. 23 Civ. 11111 (PMH), 2025 WL 2144780, at *2 (S.D.N.Y.

July 29, 2025) (citing 15 U.S.C. § 1117(c)(1)–(2)).  "Congress added the statutory damages

provision of the Lanham Act in 1995 because counterfeiters' records are frequently nonexistent,

inadequate, or deceptively kept, making proving actual damages in these cases extremely

difficult if not impossible." Gucci Am., Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d at 520 (citation modified).

If the infringement is willful, "the court may award up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." Otter Prods., 2025 WL 2144780, at *2 (citing 15 U.S.C. § 1117(c)(1)–(2)). The standard for willfulness "is simply whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded the possibility." Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd., 996 F.2d 1366, 1382 (2d Cir. 1993). "Willfulness may be inferred when the products in question are clearly counterfeit." Moose Toys Ltd, v. Baby&Mommy K-ingdom Toy Store, No. 21 Civ. 2370 (GBD) (OTW), 2025 WL 3204418, at *3 (S.D.N.Y. Nov. 13, 2025).

When determining appropriate statutory damages under the Lanham Act, courts consider seven factors:

> (1) expenses saved and profits reaped by the infringer/defendant; (2) the plaintiff's lost revenues; (3) the value of the trademark; (4) the need to deter other potential infringers; (5) whether the defendant's conduct was innocent or willful; (6) the cooperativeness of the defendant in providing records relevant to profits and losses; and (7) the need to deter the defendant from future misconduct.

Otter Prods., 2025 WL 2144780, at *3.

A Court may deem a defendant's infringement willful by virtue of its default. See Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) ("By virtue of the default, [defendant's] infringement is deemed willful, and therefore the Court has discretion to award anywhere between $500 and $1,000,000 per counterfeit mark per type of good sold."). In addition, where the products in question are clearly counterfeit, as is the case here, willfulness can be inferred. (See Dkt. Nos. 9-3–9-8). See also Moose Toys, 2025 WL 3204418, at *3 ("Willfulness may be

16

inferred when the products in question are clearly counterfeit."); Coach, Inc. v. Melendez, No. 10

Civ. 6178 (BSJ) (HBP), 2011 WL 4542971, at *5 (S.D.N.Y. Sep. 2, 2011) ("Because the marks used

by defendants on their products are virtually identical to the [plaintiff's] [r]egistered

[t]rademarks, the conclusion is inescapable that defendants' infringement and counterfeiting is

intentional."), adopted by, 2011 WL 4542717 (S.D.N.Y. Sept. 30, 2011).  Accordingly, we find that

Defaulting Defendants' infringement was willful, and statutory damages are appropriate under

the Lanham Act.

To determine the amount of statutory damages, the Court now considers the seven

factors listed above.  Regarding the first, second, and sixth factors, Defaulting Defendants have

not appeared, answered, or otherwise responded to the Complaint, and have not complied with

expedited discovery pursuant to the TRO.  (See Dkt. No. 16).  These failures prevent us from

determining Defaulting Defendants' saved expenses and profits, or calculating Plaintiff's lost

revenues, due to the infringing conduct.  Because Defaulting Defendants offered the Counterfeit

Products on the internet, however, (see Dkt. No. 9 at 8), "we may draw upon the inference of a

broad scope of operations in cases dealing specifically with websites that ship and sell to a wide

geographic range."  Mattel, Inc. v. www.power-wheels-outlet.com, No. 21 Civ. 8108 (PAE) (GWG),

2022 WL 2900763, at *3 (S.D.N.Y. July 22, 2022), adopted by, 2022 WL 3159317 (S.D.N.Y. Aug. 8,

2022).  Accordingly, given Defaulting Defendants' failure to provide records of profits and

expenses, we infer that Defaulting Defendants engaged in a broad scope of operations, such that

the first, second, and sixth factors weigh in favor of Plaintiff's Requested Damages.

The third factor also weighs in favor of Plaintiff's Requested Damages.  Plaintiff has

established that the Blippi Marks are valuable, based on Blippi Content garnering twelve billion

views on YouTube, Plaintiff's investment in advertising, as well as their exclusive right to use or license the Blippi Marks.  (See Dkt. No. 9 ¶¶ 9, 12–14, 16).  As established above, (see § III.C.3, supra), Defaulting Defendants' infringement was willful and, therefore, the fifth factor weighs in favor of Plaintiff's Requested Damages.

Factors four and seven, which relate to the need to deter Defaulting Defendants and others, also weigh in favor of Plaintiff's Requested Damages.   "The need to deter other counterfeiters is particularly compelling given the apparent extent of counterfeit activity . . . ."  Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc., No. 14 Civ. 6911 (VEC) (JLC), 2016 WL 658310, at *5 (S.D.N.Y. Feb. 17, 2016).  "In addition, the Defaulting Defendants' willful misconduct and failure to appear in this litigation merit a finding that 'a slight damage award is unlikely to deter them from continuing their illegal business.'"  Qlay Co. v. Adajay, No. 20 Civ. 9776 (JGK) (SDA), 2021 WL 6065800, at *6 (S.D.N.Y. July 30, 2021), adopted in relevant part, 2021 WL 6064404 (S.D.N.Y. Dec. 21, 2021).  Accordingly, we find that the willful conduct of Defaulting Defendants in infringing the trademarks at issue merits awarding an amount of damages that will deter both Defaulting Defendants and other potential infringers.

Further, Plaintiff's Requested Damages of $50,000 per willful infringement is significantly lower than the $2,000,000 maximum the Court is empowered to impose.  See 15 U.S.C. § 1117(c); Mattel, Inc. v. www.power-wheels-outlet.com, 2022 WL 2900763, at *2.  The Requested Damages are therefore within the Court's "wide discretion in awarding statutory damages[.]"  Id. "Courts in this [C]ircuit have frequently awarded statutory damages in the range of $20,000 to $50,000 per willfully infringed mark in cases where defendants failed to appear and the Court has limited information as to the scope or circumstances of defendants' infringement."  Ontel

18

Prods. Corp. v. Airbrushpainting Makeup Store, No. 17 Civ. 871 (KBF), 2017 U.S. Dist. LEXIS 221489, at *3–4 (S.D.N.Y. June 29, 2017) (collecting cases).  For the foregoing reasons, and because it would serve both the compensatory and punitive purposes of the Lanham Act's prohibitions on willful infringement, we find Plaintiff's Requested Damages to be reasonable.

### b.  Post-Judgment Interest

Plaintiff also seeks "post-judgment interest calculated pursuant to the statutory rate." (Dkt. No. 34 at 13, 28 n.8).  The applicable federal statute, 28 U.S.C. § 1961, provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court . . . calculated from the date of entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961.  The Second Circuit has explained that an award of post-judgment interest is mandatory. See Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008) ("Because we have consistently held that an award of post-judgment interest is mandatory, the district court erred in not including interest at the statutory rate."); Suriel v. Cruz, No. 20 Civ. 8442 (VSB) (SLC), 2022 WL 1750232, at *17 (S.D.N.Y. Jan. 10, 2022) (awarding post-judgment interest).  Given the mandatory nature of post-judgment interest, we respectfully recommend that Plaintiff be awarded post-judgment interest consistent with 28 U.S.C. § 1961.

Accordingly, the Court recommends that Plaintiff be awarded $50,000.00 in statutory damages for each Defaulting Defendant, for a total of $2,650,000.00, plus post-judgment interest pursuant to 28 U.S.C. § 1961.

**IV.CONCLUSION**

For the reasons set forth below, we respectfully recommend that Plaintiff be awarded (1) statutory damages in the amount of $50,000.00 for each of the Defaulting Defendants, for a total of $2,650,000.00; and (2) post-judgment interest at the statutory rate.  See 28 U.S.C. § 1961.

Plaintiff shall serve a copy of this Report and Recommendation on Defaulting Defendants and file proof of service by **January 19, 2026**.

Dated:          New York, New York
                January 12, 2026

_____
SARAH L. CAVE
**United States Magistrate Judge**

                    *                    *                    *
**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Abrams.

Case 1:22-cv-02386-RA-SLC    Document 52    Filed 01/12/26    Page 21 of 21

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).